Merrick, J.
Plaintiffs Choeun Ny and Sahoeut Noeun filed separate small claims actions to recover Personal Injury Protection (“PIP”) benefits for injuries allegedly sustained while in a motor vehicle insured by the defendant. The actions were transferred to the regular civil docket and consolidated for trial upon motions by the defendant.
The record indicates that invoices received by the defendant for the plaintiffs’ medical treatments were submitted to a fee review program. At the conclusion of the fee review, the defendant paid the majority of the invoices in full. Payment for two of Ny’s invoices, however, was reduced by a total of $269.00, and payment of one of Noeun’s bills was reduced by $454.00. The fee review determined that these amounts were in excess of reasonable charges for the services in question in the region where they were provided. The defendant has a policy of defending its insureds and contesting any cases wherein the medical provider disputes the determination of the fee review or attempts to collect the balance of the bill from the insured. The medical providers did not do so in this case.
Cross-motions for summary judgment were heard and denied in September, 1996. The defendant thereafter scheduled depositions of those medical providers who received partial payments. At that point, the providers all agreed to accept the payments made by the defendant as full payment of their claims, and executed releases to that effect in favor of both the plaintiffs and the defendant. No additional money was paid for the releases. The only consideration given was the defendant’s agreement to refrain from involving the medical providers in any litigation concerning the bills. Based upon that development, the parties again filed cross-motions for summary judgment, which were heard by a second judge. That judge denied the defendant’s motion, and allowed the plaintiffs’ motion, awarding nominal damages of $1.00 and attorney’s fees. The defendant has appealed that decision pursuant to Dist./Mun. Cts. R. A. D. A., *180 Rule 8C.[3] The plaintiffs filed a Rule 8C cross-appeal on a charge of error in the court’s failure to award interest on the unpaid invoice amounts up to the date of the execution of the providers’ releases. The parties have briefed and argued the issues raised in both sets of Mass. R. Civ. R, Rule 56 motions.
1. In their first motions for summary judgment, the plaintiffs argued that G.L.C. 90, §34M prohibits the defendant from contesting the reasonableness of the amount charged by a medical provider without conducting a “medical review” by a practitioner licensed in the same field as the provider. If there were any question about the error of that proposition in September, 1996 when the motions were decided, there is none now. When an insurer has conducted a fee review of the amount of the charge for a service, as opposed to the medical necessity of the service itself, no “peer review” is necessary before the insurer pays only the amount of the charge which is deemed reasonable. Nhem v. Metropolitan Prop. & Cas. Ins. Co., 1997 Mass. App. Div. 84, 86-87, aff’d 45 Mass. App. Ct. 1102 (1998). The plaintiffs’ original motions for summary judgment were properly denied.
2. The defendant’s first motion for summary judgment asserted that it had paid the invoice amounts determined to be due by its fee review program. “[A]n insurer’s proper use of such internal system for calculating reasonable expenses or charges has been recognized.” Id., 1997 Mass. App. Div. at 87. The defendant is in fact required to operate the fee review and other similar programs under performance standards issued by Commonwealth Automobile Reinsurers, see G.L.C. 175, §113H(C) and (E), and by the Commissioner of Insurance. Automobile Insurers Bureau of Mass. v. Commissioner of Insurance, 415 Mass. 455, 461-462 (1993) (Insurers required to use scientific and statistical techniques to investigate fraud in auto liability and PIP claims). See also, Cost and Expense Containment Standards for Motor Vehicle Insurers, 211 C.M.R. §93.04(6) (c). It remained open to the plaintiffs, however, “either to demonstrate another plausible and coherent method of calculation that would result in higher figures for reasonable and customary charges than those paid by [the defendant]; or, alternatively, to show that [the defendant’s] method of calculating reasonable and customary charges was conceptually flawed.” Boston v. John Hancock Mut. Life Ins. Co., 35 Mass. App. Ct. 318, 320 (1993). The medical bills submitted by the plaintiff and certified under G.L.c. 233, §79G were thus sufficient to raise a genuine issue of material fact on that subject.
The defendant argued further, however, that it has a policy of voluntarily defending and indemnifying its insureds in the event that a medical provider makes a claim against an insured for the balance of a fee reduced by the defendant’s fee review program. Relying on a line of Michigan cases, the defendant argued that the plaintiffs had no standing to bring this claim because they had no damages in view of both (1) the defendant's payment of what it calculated to be reasonable medical expenses and (2) its undertaking to defend and indemnify the plaintiffs against any provider’s claimlfor a balance. See McGill v. Automobile Ass’n of Michi *181 gan, 207 Mich. App. 402; 526 N.W. 2d 12 (1994) and LaMothe v. American Auto. Ass’n of Michigan, 214 Mich. App. 577; 543 N.W. 2d 42 (1995). We think that the question under Massachusetts law is better stated as whether either of the plaintiffs was, in §34M terms, an “unpaid party” entitled to seek damages and attorney’s fees under that statute. To interpret the statute, we consider the underlying legislative intent.
The comprehensive statutory scheme for motor vehicle insurance in this Commonwealth which is set forth in G.L.c. 90, §§34A-34Q was enacted not only to create an inexpensive procedure for obtaining full compensation for injuries sustained in automobile accidents, but also to control the skyrocketing costs of automobile insurance in this State.
Im v. Metropolitan Prop. & Liab. Ins. Co., 1994 Mass. App. Div. 113, 114, citing Flanagan v. Liberty Mut. Ins. Co., 383 Mass. 195, 198 (1981) and Chipman v. Massachusetts Bay Transp. Auth., 366 Mass. 253, 255 n. 3 (1974). “The limitation of reasonableness [of medical expenses] is consistent with the Legislature’s purpose in enacting the Massachusetts No-Fault Insurance scheme ‘to address the high costs of motor vehicle insurance in this Commonwealth.” Nhem, supra, 1997 Mass. App. Div. at 87, citing Creswell v. Medical West Commun. Health Plan, Inc., 419 Mass. 327, 328 (1995). Containment of medical costs is as much in the plaintiff’s own interest as the defendant’s, as long as the plaintiffs are protected from claims by the medical providers. Insurers and health care providers are much better able to contest the value of medical services than are individual patients. “The patient wants to be removed from the collection process as soon and as fully as possible.” Boston v. Aetna Life Ins. Co., 399 Mass. 569, 572 (1987). Undoubtedly, it is for this reason that a provider who has not received full payment of his bill is included within the §34M definition of an “unpaid party,” entitled to bring suit directly against the insurer and, if successful, recover attorney’s fees.
In light of the public policy underlying §34M, we find persuasive the reasoning of the Michigan cases cited above, and conclude that where the calculation of reasonable medical expenses has been made and paid by a PIP insurer who has made a binding undertaking to defend and indemnify the insured against any claim for the balance of the provider’s bill, the individual insured is not an “unpaid party” entitled under §34M to seek the balance of the bill as well as a bonanza of counsel fees. If the defendant in this case had in fact issued a binding statement of indemnification, no issue as to the status of either of the plaintiffs as an “unpaid party” entitled to bring a §34M suit would have arisen, and thus, consistent with the purposes of the no-fault statutory scheme, wholly unnecessary litigation would have been prevented. That was not, however, the situation in this case at the time of the defendant’s first motion for summary judgment.
The defendant’s policy of defending and indemnifying against “balance billing” claims was not communicated to the plaintiffs or binding upon the defendant. In the Michigan cases, by comparison, the insurers’ policy was buttressed by a directive of the Commissioner of Insurance requiring auto insurers to “act at all times to assure that the insured or claimant is not exposed to harassment, dunning, disparagement of credit, or lawsuit as a result of a dispute between the health care provider and the insurer.” McGill v. Automobile Ass’n of Michigan, supra, 207 Mich. App. at 406-407; 526 N.W. 2d at 14.
The defendant’s first motion for summary judgment was properly denied.
3. By the time the second set of cross-motions for summary judgment were filed, however, the defendant had obtained releases from the providers who had agreed to accept as full payment only what they had already received from the defendant. As noted, the only consideration given by the defendant was forbear- *182 anee from involving the medical providers in litigation over the reasonable value of their services. In view of those releases and agreements, it cannot be said that there remains any genuine issue of material fact as to whether the PIP benefits pád prior to suit constituted full compensation for the plaintiffs’ “reasonable” medical expenses, or whether either plaintiff is, or ever was, as an “unpaid party.”
In Fascione v. CNA Ins. Companies,, 1997 Mass. App. Div. 132, on which the plaintiffs rely, uncontested PIP benefits were paid late, after suit was brought. In that specific circumstance, we held that while the plaintiff could not at the time of judgment recover PIP benefits which by then had been paid, she was entitled to both interest for the period of time in which the benefits had been withheld and attorney’s fees. The plaintiffs now wish us to view the releases in this case as a late “payment,” and to interpret §34M and Fascione as making each plaintiff an “unpaid party” entitled to nominal damages and counsel fees. The payment of benefits in Fascione after suit was brought established that the plaintiff had been an “unpaid party” at the time suit was brought. In this case, however, the releases and agreements, which were executed after suit but involved no additional payment, establish that the plaintiff was not an “unpaid party” at the time suit was commenced.. Certainly, given the agreement between the providers and the insurer that the plaintiffs’ “reasonable” expenses were the amounts paid before suit, the plaintiffs had “no reasonable expectation of proving an essential element” of their cases, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); i.e., that their “reasonable” medical costs exceeded the PIP benefits paid before suit.
Given what we have said about the purposes of the no-fault statutory scheme, it would be a perverse interpretation of §34M indeed which required the payment of attorney’s fees when no medical expenses have been determined to be unpaid or untimely paid. On the second set of cross-motions for summary judgment, both the allowance of the plaintiffs’ motions and the denial of the defendant’s motion were error.
The judgments are reversed.[4] Judgment is to enter in both cases for the defendant.
So ordered.

 The defendant has also appealed the court’s approval of attorney’s fees in the amount of $17,592.00 on the grounds that the plaintiffs’ contracts with their counsel were champertous. That doctrine has recently been abolished. Saladini v. Righellis, 426 Mass. 231 (1997). Rule 1.5 of the Mass. R. Prof. C. effectively “contemplates, without so stating, that champerty is an issue of the past, so long as the Rule is complied with.” James S. Bolán, “The New Rules of Professional Conduct,” Editor’s Commentary at 39. The judge retains the inherent power to disapprove an unreasonable fee. Saladini v. Righellis, supra at 236. The judge in this case, tellingly and appropriately, drew an adverse inference from the refusal of defense counsel to demonstrate that their fees for the same case were less than those claimed by plaintiffs’ counsel.

 In view of our decision, it is unnecessary to address the plaintiffs’ contention on their cross-appeal that they were entitled to interest.